Anthony **CROSBY–BEY,** Plaintiff,

v.

**DISTRICT OF COLUMBIA,** et al., **Defendants.**

Civ. À. No. 84–2104.

United States District Court, District of Columbia.

Nov. 29, 1984.

Charles A. Ailstock, Asst. Corp. Counsel, D.C., Washington, D.C., for defendants.

Michael Jaffe, Arent, Fox & Kintner, Washington, D.C., for plaintiff.

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

The plaintiff in this action is a prisoner at the Maximum Security Facility at Lorton, Virginia. He seeks relief from his placement in administrative segregation on May 3, 1984. He also seeks relief from punishment imposed upon him as a result of three disciplinary reports issued later in May, 1984. The plaintiff asserts that the procedures which the Lorton officials followed in imposing the segregation and punishments upon him violated Due Process.

The defendants have submitted a Motion to Dismiss Or In the Alternative for Summary Judgment. The Court also has before it Opposition thereto from court-appointed counsel for the plaintiff, and supporting memoranda. For the reasons herein set forth, the Court has, by Order of even date herewith, denied the defendants' Motion to Dismiss, and granted the defendants' Motion for Summary Judgment.

### THE IMPOSITION OF ADMINISTRATIVE SEGREGATION DID NOT VIOLATE DUE PROCESS

On May 3, 1984, defendant Vincent, a guard at Lorton, observed that the plaintiff had sustained some facial bruises and a lip injury. When questioned about his injuries, the plaintiff stated that he had walked into a cell door. Fearing that the plaintiff might have been involved in a fight with other inmates, he was removed from the general population and placed in administrative segregation for his own safety and for the safety of others. (Indeed, the plaintiff now admits that his injuries had been caused by a fight with another inmate, and not by a cell door.) (Opposition at 4).

The plaintiff asserts that his placement on administrative segregation deprived him of many liberties which he enjoyed while in the general prison population. The plaintiff also asserts that the Lorton regulations, which outline procedures for placement on administrative segregation, create a protected liberty interest in remaining in the general prison population. Because it will not affect the holding in this case, the Court assumes that the regulations *do* create a liberty interest in the plaintiff. However, as demonstrated below, the process which the plaintiff received easily satisfied the minimum requirements of the Due Process Clause.

The Supreme Court recently considered the constitutional issues concerning a prisoner's placement on administrative segregation. *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). The administrative segregation in that case, although nonpunitive, "imposed severe hardships" on the respondent. *Id.* at 467, n. 4, 103 S.Ct. at 869 n. 4. The Court held that while the Due Process Clause did not create an interest in being confined to the general prison population instead of administrative segregation, the specific Pennsylvania regulations there involved did create such a liberty interest. *Id.* at 468, 472, 103 S.Ct. at 870, 874. Nevertheless, the Court held that Due Process only required "an informal, nonadversary review of the information supporting respondent's administrative confinement, including whatever statement respondent wished to submit, within a reasonable time after confining him to administrative segregation." *Id.* at 472, 103 S.Ct. at 871–72. Because the respondent in that case received such procedures, there was no Due Process violation.

■ *Hewitt* is the controlling authority for this case. The plaintiff's administrative segregation in the present case, like that in *Hewitt*, was nonpunitive. Therefore, even assuming that the Lorton Regulations created a liberty interest for the plaintiff to remain in the general prison population, the Lorton officials were only obligated to provide an "informal, nonadversary review" of the surrounding circumstances.

■ The record is clear that the Lorton officials satisfied the procedures announced in *Hewitt*. An Institutional Classification Report in the record details Mr. Crosby-Bey's injuries and his explanation for them. (Defendants' Exhibit C). That report concluded that Mr. Crosby-Bey should be placed in administrative segregation because he appeared to be a threat to himself and to others. The record also contains a similar memorandum by defendant Vincent. (Defendants' Exhibit B). Furthermore, on May 4, 1984, the day after the incident, a Housing Board was convened to review the plaintiff's status. Al-

though the Board denied Mr. Crosby-Bey's request for a continuance, it is plain that this hearing provided him with the opportunity to submit "whatever statement [he] wished." *Hewitt*, 459 U.S. at 472, 103 S.Ct. at 871–72. In short, the undisputed facts make it clear that the Lorton officials easily satisfied the requirements of *Hewitt*, *supra*.

## THE DISCIPLINARY ACTIONS TAKEN AGAINST THE PLAINTIFF SATISFIED DUE PROCESS REQUIREMENTS

■ The plaintiff in this action also challenges three disciplinary reports issued as a result of his behavior. These disciplinary actions may be judged by the standards set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Although involving a prisoner's deprivation of good-time credits, certainly a more severe punishment than the disciplinary actions in this case, *Wolff* only required that a prisoner be given notice of the charges against him and a hearing at which he must have some opportunity to call witnesses. *Id.* at 563–366, 94 S.Ct. at 2978–79. Additionally, *Wolff* required that the prison officials state in writing the facts relied upon in reaching the disciplinary action. *Id.* at 564, 94 S.Ct. at 2978.

A review of the procedures used in disciplining Mr. Crosby-Bey demonstrates that they were in full compliance with the requirements of *Wolff*. On May 8, 1984, Mr. Crosby-Bey threatened a guard. (Brown Affidavit). The guard filed a disciplinary report on May 10, which report stated the facts underlying the charge. (Defendants' Exhibit J). A hearing was held on May 14, which resulted in a sentence of fourteen days in (punitive) administrative segregation. The findings of the hearing board were plainly stated at the bottom of the disciplinary report. Thus, the prison officials clearly satisfied the requirements of *Wolff* on this occasion.

The plaintiff was involved in two other instances of misconduct on May 17 and May 19, 1984. On each occasion the Lorton

officials followed the same procedure: Mr. Crosby-Bey was written up in a disciplinary report, appeared before the Disciplinary Board or hearing officer, which stated the reasons for upholding the disciplinary reports. (*See* Defendants' Exhibits K, L). Again it is clear that the Lorton officials satisfied the Due Process requirements set forth in *Wolff*.

### CONCLUSION

This case, brought by a prisoner, challenges on Due Process grounds his initial confinement in administrative segregation, and certain disciplinary actions taken thereafter. These are areas which the Supreme Court has squarely addressed. *See Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (administrative segregation); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (disciplinary actions). On each occasion challenged herein, the prison officials plainly complied with the Due Process requirements enumerated by the Supreme Court. Therefore, the Court has today issued an Order granting the defendants' Motion to Dismiss.